## Breathitt County Board of Education v. Back.

(Decided May 4, 1926.)

## Appeal from Breathitt Circuit Court.

1. Schools and School Districts—On Reverter of Site Granted for School Purposes by Reason of its Abandonment, Grantor is Not Entitled to School Furniture and Apparatus in School Thereon.— On reverter of site granted for school purposes by reason of its abandonment for such purposes, grantor is not entitled to the seats and other school furniture and apparatus in the schoolhouse thereon.

2. Schools and School Districts—Reverter of Site Granted for School Purposes by Reason of its Abandonment, by Virtue of Express Provisions of Statute, does Not Entitle Grantor to Schoolhouse Thereon (Kentucky Statutes, 1922, Section 4437).—Reverter of site granted for school purposes by reason of its abandonment for such purposes by virtue of express provisions of Kentucky Statutes, 1922, section 4437, does not entitle the grantor to the schoolhouse thereon.

3. Schools and School Districts—Abandonment of School Site Before Enactment of Statute on Condition that it should Revert if Not Used for School Gives Grantor Right of Possession (Kentucky Statutes, 1922, Section 4437).—Abandonment of school site, granted before enactment of 1922 edition of statutes, section 4437, first enacted in 1893, and amended in 1916, on condition that it should revert if not used for school purposes, gives grantor right of possession.

4. Schools and School Districts—Site Granted to Trustees of Graded Common School on Condition of Reverter, if Use for School Purposes Ceased, Held Not to Revert, where Subdistrict Common School was Created in Place of Graded Common School, and Succeeded to its Property (Kentucky Statutes Supp. 1924, Section 4469).—Site granted to trustees of graded common school on con-

dition that it should revert, if use for school purposes ceased, held not to revert, when, under Kentucky Statutes Supp. 1924, section 4469, subdistrict common school was substituted in place of graded common school and succeeded to its property.

5. Schools and School Districts—Statute Providing that Subdistrict Common School Might be Created in Place of Graded Common School and Succeed to its Property Held Not to Violate Right of One Granting Site to Latter with Right of Reversion on Abandonment of Use for School Purposes (Kentucky Statutes Supp. 1924, Section 4469).—Kentucky Statutes Supp. 1924, section 4469, providing that graded common school district might be abolished and subdistrict common school created in place thereof, which should succeed to its property, held not to violate rights of one granting site to former for school purposes on condition of reverter on abandonment of such use, as statute merely changed holder of legal title.

6. Schools and School Districts—Release by Board of Trustees of Graded Common School District to Grantor of School Site Held Ineffective, where Property had Not Been Abandoned (Kentucky Statutes Supp. 1924, Section 4466).—Written release by board of trustees of graded common school district to grantor of school site used for school purposes for one year held ineffective, as board had no power to surrender title as long as property was intended to be used for school purposes, and which, under Kentucky Statutes Supp. 1924, section 4466, must be held for use and benefit of district or successors.

7. Schools and School Districts—That Taxpayer Might Prevent County Board of Education from Improving Property Subject to Reversion, if Abandoned for School Purposes, does Not Prevent Board from Defending its Title Thereto (Kentucky Statutes, 1922, Section 4437).—That taxpayer, under Kentucky Statutes, 1922, section 4437, might prevent county board of education from improving with public funds property subject to reversion, if abandoned for school purposes, does not prevent board from defending its title thereto, nor does it enlarge rights of the grantor.

GRANNIS BACH for appellant.

E. C. HYDEN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

A short time prior to June 7, 1917, the county common school district covering the territory occupied by the town of Quicksand in Breathitt county was created into a graded common school district pursuant to statutory provisions provided for the purpose. While the district was a county common school one the appellant and plaintiff below, Miles Back, the owner, permitted the construc-

tion of a schoolhouse on the three-fourths of an acre of land involved in this controversy. On the day mentioned he executed a writing to the trustees of the graded common school district, which.had been created as indicated,. by which he conveyed the lot to them as such trustees, and the habendum clause in it said: "To have and to hold the above described property unto the party of the second part (trustees) in fee simple, so long as said property is used for school purposes, but it is especially provided that if at any time said property shall cease to be used for school purposes for one year, it shall revert to said parties of the first part, or their heirs." After that a new schoolhouse was erected on the lot and equipped with seats and other necessary apparatus for the successful conducting of a graded school and one was conducted therein each year up to and including 1924. In the meantime a large saw milling plant employing as many as 150 to 200 laborers that was theretofore operated in the town of Quicksand suspended, resulting in a great reduction of population in the district; so much so that it was found that the school could not be successfully conducted thereafter as a graded school, and before the beginning of the scholastic year in 1925 the trustees concluded to abolish the graded school district and so indicated on the records of the board and declared their purpose to abandon the status of a graded school in that territory. On August 24. of that year the State Board of Education, pursuant to the provisions of an act of March 7, 1922, which is chapter 8, page 35 of the Session's Acts for that year and now section 4469 of the 1924 supplement to Carroll's Statutes,. declared the graded common school in Quicksand as abolished and created in the district in lieu thereof a subdistrict common school. The county board of education (appellant and defendant below) employed teachers for the reduced character of school and they began the teaching of the school in the schoolhouse when plaintiff forcibly took charge of it and fastened the doors with nails and asserted ownership, not only in the lot but also in the building and all of the desks and other apparatus therein. He declined to surrender possession to defendant and it instituted forcible detainer proceedings against him. Whereupon he filed this equity action in the Breathitt circuit court against it to quiet his title to the property and sought and obtained a temporary injunction enjoining it from not only asserting title thereto, but also from prosecuting its forcible detainer action against plaintiff.

Defendant moved a member of this court to dissolve that injunction, which he in conjunction with three other members did.  The case was then prepared and on final submission the court perpetuated the injunction against defendant and quieted plaintiff's title as prayed for in his petition, and to reverse that judgment defendant prosecutes this appeal.

It is the plaintiff's contention that the right of reverter provided for in his deed to the trustees of the graded school matured when the property was abandoned as a graded school district and that the only title he ever conveyed was to the trustees of such school, and that the county board of education never succeeded to that title. Manifestly, if plaintiff was correct he would not be entitled under his construction to the seats and other school furniture and apparatus in the schoolhouse, but at most could only claim title to the lot and the house. Moreover, under the provisions of section 4437 of the 1922 edition of the statutes, which was first enacted in 1893 and amended in 1916 and which was in force at the time of the execution of the conveyance in controversy, expressly provides that a reversionary interest in a school lot "shall not deprive the county board of the schoolhouse or other improvements thereon." That provision clearly defeats plaintiff's right to claim even the schoolhouse. Therefore, if his construction is sustainable at all (but which we shall see is not true) he could only assert under his alleged reverter the right to recover the possession of the lot itself. This right would follow such abandonment of the use if the conveyance had been executed prior to the enactment of that section. Board of Education of Jefferson County v. Littrell, 173 Ky. 78, and Evans v. Cropp, 141 Ky. 514.  But, as above indicated, we are thoroughly convinced that there has never been an abandonment so as to work a reverter of the property and that plaintiff was entitled to no sort of possession or control of any of it at the time he took forcible possession of it, or at any time since then.

The right of reverter becomes complete, according to the terms of the deed, only when "said property shall cease to be used for school purposes for one year." According to that provision there must not only be a ceasing to use the property for school purposes, but also that it should be so ceased to be used for that purpose for as much as one year. If, therefore, there had been such ceasing of the use as would entitle plaintiff to possession

under the reverter clause it had not continued for one year at the time he took possession of the property, and for that reason alone he was not entitled to it. But it will be observed that it was not stipulated for the right of reverter to take effect when the property ceased to be used for *graded* school purposes, but only when it was ceased to be used for "school purposes." The ordinary district or subdistrict school in a county is a part of the common school system therein, and the same is true with reference to a graded school, for it is designated as a "graded common school." The only practical difference between the two is that in the latter a higher curriculum of study is provided, with the necessary consequence of more expense in conducting the school and which may be provided for by taxation levied under provisions of prevailing statutes. It was, therefore, provided by the 1922 statute, *supra,* that the State Board of Education, which has certain jurisdiction over both graded and other common schools, might, on the proper showing, abandon or suspend the former and direct that thereafter the school should be conducted as a subdistrict common school. That statute invaded no constitutional or other rights of plaintiff arising under his conveyance, since when he stipulated that the property should be used for school purposes it was necessarily intended to include any school purpose that was then or might thereafter be provided for, regardless of how or by whatsoever agency it might be conducted as might be prescribed by future legislation. The central idea in the conveyance was that the county public school system at any and all times in the future was to have the right to use the property for school purposes and that as long as it was so done plaintiff had no right to interfere.

The 1922 act, *supra,* now section 4469 of the 1924 supplement to Carroll's statutes, also provided that: "When a graded common school district is thus abolished and a subdistrict of the county system is created therefrom, all property belonging to, possessed and held in the corporate name of the given board of trustees of the graded common school district abolished shall pass to and be possessed and held in the corporate name of the county board of education of the county in which the graded *common school district abolished is located."* That provision also did not invade any of plaintiff's constitutional rights by impairing his contract (the statute having been enacted after the conveyance), since it only

provided, in substance, for a holder of the legal title for the use and benefit of the *cestui que trust,* which were the patrons and school children of the district, and a change in the administrative trustee as title holder, without in any wise affecting the purposes of the trust, impaired no provision of the contract.   The county board of education became, under the operation of the 1922 act, a succeeding legal title holder for the trust purposes in lieu of the former one (the board of trustees of the graded school) which, under the forms of law, had become abolished.   The case is analogous to provisions providing for the appointment of trustees as legal title holders in a vast number of other instances where for any reason the prior trustee ceased to be such.

But, it is said that before the graded school at Quicksand was legally abandoned or abolished by the State Board of Education pursuant to the statute, *supra,* the then trustees of the graded school by official action duly taken released the property to plaintiff and executed to him a writing to that effect; and it is insisted that because of that fact defendant never became vested with the title to the property, even under our construction of the 1922 act, since there was no title in existence (it having been released to plaintiff) to become vested in it.   The fallacy of that argument lies in the fact that the board of trustees of the graded school had no authority to so surrender the title to the property as long as it was being used for school purposes or intended to be so used.   One section of the 1922 act, now section 4466  of the supplement, *supra,* prescribed the duties of trustees of graded school districts with reference to the acquiring, holding and disposition of the title to property, both real and personal, none of which include the voluntary surrendering or giving away of such property.  On the contrary, it provided that, "The title of all such property shall vest in said board of trustees and their successors in office, to be held sacred to the use and benefit of said graded common school district," which necessarily includes any character of school that might succeed under the law to the property as a part of the common school system.   Besides, the relinquishment by the board of trustees of the graded school to plaintiff as the foundation of the claim now under consideration was made, executed and done by himself, his son and his son-in-law, as a majority of the members of the board, and it is quite possible that the relinquishment was void for that reason, but for the others

hereinbefore stated it is not necessary for the purposes of this case that it should be so held and we do not now determine the question.

What we have said involves none of the questions raised and discussed in the case of Ritter v. County Board of Education, 150 Ky. 847, and the response to the petition for rehearing in the same case reported in 151 Ky. 578, as growing out of and emanating from the provisions of section 4437, *supra,* of our present statutes, since whatever may be the limitations on the right of defendant, county board of education, to raise funds by taxation and expend them for improvements on the lot *as between* it and a taxpayer of the district because of the reverter clause in the deed, it certainly had the right at the time of the filing of this action, and at the time of all the transactions in this case to assert and defend whatever title it obtained under the deed to the lot; and the fact that a taxpayer might prevent it from improving the property out of public funds, because of the defeasance clause in the deed, does not enlarge the right of plaintiff, the grantor, to take possession of the property because of such defeasance clause and in defiance of his absolute conveyance of it to be forfeited only when it ceased to be used for school purposes. In other words, as between him and the holder of whatever title he did convey he must respect it and which was substantially held in the recent case of Williams v. McKenzie, 203 Ky. 376.

It results, therefore, that the judgment must be and it is reversed, with directions to sustain the prayer of the counterclaim and cross-petition contained in defendant's answer by quieting its title to the property, and to dismiss the petition.